THE STATE OF OHIO, Appellant,

v.

SYMES, Appellee.

[Cite as *State v. Symes* (1994), 96 Ohio App.3d 156.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–930727, C–930728 and C–930729.

Decided July 20, 1994.

_Joseph T. Deters_, Hamilton County Prosecuting Attorney, and _L. Susan Laker_, Assistant Prosecuting Attorney, for appellant.

_James M. Looker_, for appellee.

HILDEBRANDT, Presiding Judge.

The plaintiff-appellant, the state of Ohio ("appellant"), appeals from the judgments of the Hamilton County Municipal Court in which the court suppressed evidence of an alcohol-content test administered to the defendant-appellee, Steven Symes ("appellee"), in connection with each one of three separately numbered charges lodged against the appellee. In a single assignment of error, the appellant alleges that the trial court erred in suppressing the results of the appellee's breath test. We find the assignment to be well taken.

The facts of this case are not in dispute. On May 1, 1993, the appellee was stopped by Deputy Sheriff Thomas Butler ("Butler") for a traffic violation. After observing that the appellee displayed indicia of intoxication, Butler transported the appellee to a sheriff's district station for a breath test on an Intoxilyzer 5000. It was stipulated below that a radio frequency interference survey had been properly performed on this specific machine within the week prior to the appellee's breath test, and that during the survey, a sensor had detected interference from a mobile radio in the garage area of the station about ten feet away.[1] Butler acknowledged, however, that when the time came to administer the appellee's test he did not leave the appellee to determine personally whether any mobile radios were actually being used in the garage. Butler testified that

---

1. The record reflects that counsel entered into a stipulation as follows:

"[Defense counsel]: Judge, we are dealing only with the very limited issue on the RFI. We'll stipulate to the survey itself has been done properly and that it does show interference with mobile radio from the garage area.

"We'll also stipulate that this was an arrest without a warrant and that there was a breath test exceeding the limit. We are not challenging the—the calibration or any of the other things. We are just dealing with the stop, probable cause and RFI involving the actual subject test of the defendant, not the survey itself.

"THE COURT: You understand what they want? To the testimony on the stop, probable cause for the stop and what else?

during the appellee's test, he relied instead upon the same sensor that had earlier detected interference during the radio frequency interference survey.

The record discloses that the sensor was part of a radio interference detection device incorporated in the Intoxilyzer 5000. If working properly, the device would automatically terminate a breath test whenever it sensed the presence of radio interference. The record further discloses that the Intoxilyzer 5000 was calibrated by a senior operator on April 25, 1993, during the week prior to the appellee's test, and on May 2, 1993, the day after the appellee's test. On both occasions, the radio interference detection device was also tested and found to be working properly.

Ohio Adm.Code 3701–53–02(C)(1) provides:

"Radio transmitting antennae shall not be used within any RFI-affected zone during conduct of a subject test or a calibration check. No radio transmitting antennae that have not been subjected to an RFI survey shall be used within thirty feet of the breath testing instrument during conduct of a subject test or a calibration check."

Ohio Adm.Code 3701–53–02(C), Appendix G, states in part:

"EXTERNAL DETECTORS: If an external detector is utilized, it is to be tested * * * for sensitivity. If the detector senses RFI, mark diagram with an 'O' at the farthest distance from the detector where the interference is observed. Sensitivity of detector units is to be adjusted so that the detector will be more sensitive to interference than the instrument."

In *Greenville v. Holzapfel* (1993), 85 Ohio App.3d 383, 619 N.E.2d 1100, the defendant alleged that the trial court erred in overruling his motion to suppress the results of his breath test because the state failed to prove that no radios were employed at the time of his test. Specifically, he argued that it was incumbent upon the officers conducting his test to traverse the relevant area prior to the test to ensure that there was no prohibited radio usage.

---

"[DEFENSE COUNSEL]: Just the RFI as it affected his individual test, not as to how the survey was done.

"[THE PROSECUTOR]: Not as to the survey itself.

"[DEFENSE COUNSEL]: You'll stipulate there was interference from the garage?

"[THE PROSECUTOR]: Garage at ten feet; isn't that correct?

"SHERIFF DEPUTY: Yes, that's correct.

"THE COURT: Whose? Are you stipulating there was interference in his test?

"[THE PROSECUTOR]: No, not in his test.

"[DEFENSE COUNSEL]: Just that the survey—

"[THE PROSECUTOR]: Reflects there is interference from ten feet in the garage area of the—

"THE COURT: You want testimony of the fact that there wasn't any interference in this case?

"[DEFENSE COUNSEL]: That's what the issue is going to be."

In rejecting that argument, the *Holzapfel* court reasoned:

"Nothing in the Administrative Code mandates that officers must physically ensure that prohibited radio usage does not occur during an intoxilyzer test. Indeed, such assurance is the purpose of external detectors and RFI surveys. If prohibited radio use occurred during a test period, the external detector would sense the interference and 'shut down' the machine. Therefore, as long as the intoxilyzer and the external detector are established to be in proper operating condition, there is a presumption that the test protocol prohibiting certain radio operation during test periods has not been violated.

"If the accused believes that prohibited radio usage occurred during his test period, he may rebut this presumption by coming forward with evidence that such prohibited radio usage did occur at the relevant time. [*State v.*] *Adams* [ (1992) ], *supra,* 73 Ohio App.3d [735] at 744, 598 N.E.2d [176] at 182. If the accused is able to sufficiently show prohibited radio usage, the introduction of any evidence concerning the breath test result would be precluded. *Id.*" *Holzapfel, supra,* 85 Ohio App.3d at 389, 619 N.E.2d at 1104 [2]; see *State v. Satterfield* (June 30, 1993), Lucas App. No. L–92–315, unreported, 1993 WL 311544.

We are persuaded by the court's analysis in *Holzapfel* and choose to apply its holding to this case. As noted above, it was stipulated that the radio frequency interference survey was properly completed. Further, the intoxilyzer was calibrated six days prior to and also on the day following the appellee's test. On both occasions, the radio interference detection device was found to be properly working. The appellee did not come forward with evidence that prohibited radio usage occurred during his test. We therefore hold that the trial court erred by suppressing the result of the appellee's breath test.[3]

For the reasons stated herein, the judgments of the Hamilton County Municipal Court are reversed and this cause is remanded for further proceedings consistent with this opinion and law.

*Judgments reversed*
*and cause remanded.*

DOAN and GORMAN, JJ., concur.

---

**2.** The court ultimately reversed Holzapfel's conviction because the intoxilyzer had not been tested independently from the external detector and, therefore, the state had failed to establish the proper operating condition of the intoxilyzer and the external detector.

**3.** This case is not, as the appellee would have us believe, "virtually identical" to *State v. McCloy* (Oct. 10, 1984), Hamilton App. No. C–830965, unreported, 1984 WL 7000. The most telling point of distinction is the presence in this case of a working radio frequency detection device before, during, and after the administration of the appellee's breath test. In *McCloy*, such a device was not in use until five weeks after the administration of the test there in question.